The next case is number 221488, Valerie Sullivan v. etectRx, Inc., et al. Mr. Chlansky, please introduce yourself on the record. Good morning, judges. My name is David Chlansky, and I represent Valerie Sullivan. With your permission, I will reserve four minutes for rebuttal. You may have three. Yes, sir. May I proceed? Yes. Okay. Your Honors, this is a case that's very interesting. There's an aspect of it that is about what the papers say, what the contract says, and there's an aspect about things that it does not say that are very unusual. So at core, this is a commercial case. My client is an executive who was employed for a set term, who engaged in negotiation of an arrangement whereby she would have severance if her employment were not continued for any reason. There's a contract that very clearly in its four corners sets out that there are certain events that allow for severance not to be paid, and there's an explicit provision that says otherwise severance is paid. And does that severance mean that when the one year the contract expires, if it's not renewed, that constitutes severance? Yes, sir. And that's exactly a great question because this is a commercial dealing where the contract embodies exactly what was discussed, and there is a pleading that represents that it was negotiated that no matter whether she worked for one year, six years, or ten years, that because she was being induced to go with a startup company, that so long as one of three things did not happen, she would be assured of that severance. And that was an inducement to bring her to this small company. Those three things were death or disability, not in question. Forecaused termination, not in question. Termination by her choice for good cause, not in question. None of those things happened. What happened was she was told that she was terminated. Then that was converted by a sleight of hand into being, quote, non-renewed. But in any event, either of those two formulations track on to an inexorable outcome, which is she gets the year severance. Are you suggesting that she automatically had been renewed several times? Are you suggesting she had to be renewed? Well, no. It's actually a negotiated commercial outcome that's clear from the paper, which is she didn't have to be renewed. But however long she stayed, whether it was for the one-year term or it was for six one-year terms, evergreen renewals, she would be entitled to a runway of a year after that time so that she could have plenty of time to go find a suitable assignment after that. And this was part of the risk allocation of intelligent commercial parties that made that decision. That's pleaded explicitly in the complaint, and it's for reasons unknown to myself discounted in a way that's really kind of hard to understand. Let me ask you about some of the language of the agreement that we're working with. Yes, sir. Your position is that non-renewal is a termination that would trigger severance? Expiration per Section 2. If that were the case, then why are there different notice requirements for expiration or non-renewal and for termination without cause? Well, that's simply a matter of commercial dealing. There's 60 days' notice if you're not going to renew to avoid the evergreen automatic renewal. There's 30 days' notice for good cause, and there's a cure period in the for good cause. And to the degree that there's any question about this non-renewal triggering the severance, it's explicitly answered, and this is very unlike other case law. But they could terminate for no cause if they wanted to? On 30 days' notice. On 30 days' notice. Yes, sir. Okay. If they did that, would severance be? Yes, sir. Okay. And it's in Section 2. So why then would they need to give 60 days' notice if they were not renewing? Commercial dealing. That's exactly what they negotiated, and that's what they decided. In the 30 days, there are things about all contracts that are sometimes inscrutable, but there are different tracks, logically, for the same outcome here. But isn't this distinction exactly what the district court found decided the case for her? And she looked, as we must look, to the Mason case, right? No. So how would you? How do I square that? Yes. Your Honor, quite clearly. So first off, if one looks at the transcript of the motion to dismiss hearing at the district court, it's quite unusual. Right judge, not criticizing the judge, I'm just talking about the record here. At page 35 of the transcript, it goes from saying that this is exactly right, that she is entitled to the severance, repeats that in the record several times, but then says, but if she quits, then she doesn't get it. And there's a provision in here where if she quits, she doesn't get the severance. But there is no provision in the contract that says that. And in any event, my client did not quit. So there's this sort of presentation of something that's not in the contract, as if it's in the contract that's almost a deus ex machina that solves these problems. Does not exist. Not in the contract. And in any event, my client did not quit. Secondly, there's also mention at page 41 in the transcript of there being a mutual mistake, where the trial judge acknowledges that it is, in fact, the case that the contract says, what my client says it says, but that it can't mean that, which is somewhat surreal because it does mean that. So back to Mason. If I understand the applicable law here, your client, once she signed that contract and started working, was not an at-will employee. Yes, sir. And then when I look at the May 27, 2021 letter, they told her she was going to henceforth remain as an at-will employee. So that sounds like they ended the contract at that point. Is that one of your arguments? It's really quite unclear, sir. And so the first thing is, her pleading says explicitly that she was told orally that she was being terminated presently and that that letter was a bit of self-serving clean-up. But the letter also says she was terminated. She would be at-will. I guess I just want to know, are you arguing that by telling her that henceforth, instead of being not an at-will employee, as were her rights under the agreement, from and after May 27, she was going to only be an at-will employee? Are you claiming that that, in effect, was a termination triggering the severance? Yes, sir, in two separate ways. One is that she was told, first off, that she was being terminated, without any mention of any at-will conversion. Secondly, the attempt unilaterally to convert her to being an at-will employee was, in fact, a negation of the fixed term of one year of the contract. Well, I thought you alleged in your complaint that in the oral conversation they also referred to at-will. It is mentioned, although she was told that she was being asked to remain at-will and she was being told unequivocally she was terminated. And it is ambiguous. I don't pretend to have divination for this. But back to Mason, Your Honor. In Mason, first off, the severance is purely gratuitous. Secondly, it's clear in Mason that there are none of the provisions. It's exactly the same as this situation, except different in every material regard. In Mason, there is no mention whatsoever of this segue that's in Section 2 of the contract. And that segue makes clear that upon the expiration of this agreement, it's agnostic as to the root cause. Upon the expiration of this agreement, except for cause, then neither party shall have any further obligation except Section 6. And you go to Section 6, and Section 6 makes quite clear that this is, there are three exit ramps, death and disability, for-cause termination, or the employee's leaving for good cause. If you don't have one of those three, it's inexorable that she gets to the severance. With Mason, first off, pre-garden leave. Secondly, she earned her severance by doing services that Mason did not do. And thirdly, Mason has about fewer than a third of the words of this contract. And it doesn't have all these explicit provisions that make clear that it's inexorable, but for three trapdoors, none of which apply here. So, again, if one goes to the transcript of the motion to dismiss argument, what one sees is that the court is saying, I do interpret it that way. I do see that you're entitled to the severance, but she left. And that, under the contract, requires that it negates her severance. But there's nowhere in the contract that it says that. There are three trapdoors. None of them relate to her leaving, which she didn't do in any event. So, second, and recall, this is a motion to dismiss, de novo. So it's real clear from the contract, and certainly her pleading needs to be credited. Then the other thing about the transcript that's telling is that then towards the end it says, and this is on page 41, when my client makes clear that the contract says explicitly that she's entitled to the severance, the court says it's poorly written. Defendant's counsel says it's backwards. The court says it's stated backwards. Then it goes on to the next page, 42, saying it says it, and it's the opposite. And then it talks about mutual mistake, unilateral mistake. Now, this is, with all due respect, positively surreal, because nowhere in any of the pleadings- Well, aren't we reviewing this de novo? Yes, sir. So what do we care about that? Fair enough. I'm suggesting that somebody has to find something that is nonexistent to make this contract say the opposite of what it says. And so I'm using it as an illustration that one has to invent words to put in here, and that's what the underlying hearing was about, because otherwise the contract is inexorable, and even the court acknowledged that. Do you want to address your state law, your Massachusetts state law claim? The argument has been made that it's a state law issue. We follow state law. We have precedent saying if the appellate court in Massachusetts has decreed Massachusetts law means X, we need to have a darn good reason to say it's not X. Yes, sir. And as I understand it, they've said severance is not covered by that statute. Spot on. If severance is interpreted as being gratuitous compensation, if severance is earned, it's squarely in the ambit of the Wage Act. And what's your authority for that? Common sense. And that's why we're here, Your Honor. Common sense. She had to perform non-compete duties. She not only had to, they told her, prepare during your termination to perform these duties. She did perform them. They acknowledged that she was performing them by trying to release her midstream by saying you're free to stop doing them, which first off isn't how contracts work, and secondly is not how somebody negates the accrual of money that's owed. So you would distinguish case A where someone's terminated on day one and then they never do anything else for their company at all, but they get their severance payments. You would say that is not covered. But if after day one, every week they have to check in, fill out a 10-minute report, and then do that for the next week as a condition to getting the severance, then you'd say that is covered. Yes, sir. Duty, work translates to wages, earned wages. But there's no toehold in Massachusetts case law that you're pointing us to that drives that home? Other than the words earned and the fact that at some point these facts intersect and we are at that point now where after the guard and leave statute, it's become evident that you have to pay if you want somebody to refrain or provide certain duties. In this case, she did. She earned it. The company told her she had to do it. She did it. They even tried to wiggle out of it by saying stop doing it because we don't want to pay you. Okay. Any further questions for counsel? Thank you. At this time, if Attorney Katz would please introduce himself on the record to begin. Good afternoon, Your Honors, and may it please the Court. Aaron Katz for the Defendant's FLEs. I want to first just clarify for the Court what the contract actually says about when severance is triggered. One, if the employment is terminated by the company without cause, then she's entitled to severance. The second condition would be the employee, Ms. Sullivan, choosing to terminate her own employment for good reason. And Mr. Slansky does, again, have it backwards on that second point. If the company had told Ms. Sullivan that one of her duties henceforth was going to be mopping the floors of the office building, she could have triggered her right to terminate her employment for good reason. That's not what happened. And the company also did not terminate her employment. The company indicated to her in clear words, in a clear email and letter that are incorporated by reference into the complaint, that they were simply doing one thing, not renewing her contract for a second year and continuing to employ her on an at-will basis. Isn't that a breach of the contract or at least termination? Because prior to, what is it, May 27 or when she had that oral conversation the day before, she was not an at-will employee and she had the rights that were superior to an at-will employee. And then your client tells her now she's an at-will employee. That sounds like a classic termination of her employment relationship through breach of the contract. Your Honor, I don't think that's a plausible way of reading the May 27, 2021 letter. So are you saying your client, the way you read the agreement, any day your client could just get up and announce that beginning on that day she was an at-will employee? I would not take that position. I don't think that's what happened, Your Honor. But that's what the letter says. Well, in the May 27, 2001 letter, it says that the agreement will expire on its own terms on August 1, 2021, the end of the initial term. The at-will employment would then begin after the contract expires. But it doesn't say that. Show me the language that has that chronological limitation.  It says the end of your initial term, the termination date, you will get full income, et cetera. You will remain an at-will employee for continued support during this period. So the prior sentence is addressing the period between May 27 and August 1. And then the next sentence says you'll be an at-will employee for this period. So, Your Honor, I think this period refers to the period of time in which E-Tech RX was going to be exploring all options. This was a startup company that was having significant cash difficulties and was exploring multiple options for moving forward with the business. Selling the company to a big pharma company on the one hand, trying to get a licensing agreement with a big pharma company on the other hand. And that's clearly how Ms. Sullivan understood this letter as well. Didn't she say that the day before she'd been told she was terminated and there was an option to stay on as an at-will employee? I think her complaint in this regard is elliptical and opaque. There are portions of the complaint where she suggests that what the company was doing was converting her employment from contract-based to at-will literally on May 27. And then we get this letter that refers to her being at-will. Well, let me step back. Isn't the standard review here simply whether she gets by the pleading stage? In other words, should we look at her complaint in which she makes the allegation of the oral conversations in this May 27 letter as plausibly suggesting that she'd been told she was an at-will employee beginning then? And if that's plausible, then we go on to the next stage of the litigation. Well, I would have two responses to that, Your Honor. The first is I don't think they actually in their opening brief on appeal even made the argument that she was literally fired essentially on May 27. Well, not fired. Turned into an at-will employee. Well, if that's their only argument, Mason forecloses that. Mason says that converting an employee from a contract-based employee to an at-will employee is not a termination of employment. And the reason is because there's no actual break in employment. It's not like the Novo Nordisk case where Your Honor was on the panel where there literally was a break in employment of the employee. There's no break in employment here. And if you go to – I would point, Your Honors, to the severance agreement and general release, which is at pages 85 through 91 of the appendix. This is the form that under Section 6 she is supposed to sign before receiving severance. And this entire severance agreement and general release form, which is part of the negotiated terms of the contract, presupposes that she's going to be gone from the company. She's not going to have any employment relationship whatsoever. For example, in paragraph 3, this is on page 85 of the appendix, acknowledgement of no other payments or benefits. Executive's eligibility for coverage as an active executive under all employee benefit plans maintained by the company will terminate on the separation date. Any further continuation of health benefits coverage will be at executive's expense to the extent and for the period provided by law. Section 1 of that severance agreement and general release refers to separation date. Executive acknowledges that executive's employment with the company will end effective, and then there's a blank date. And that clearly is not what happened, and that's clearly not pledging the complaint. The complaint does plead, Your Honor, that her employment did end with the company, but it ended by her. The employment was terminated by her because she did not want to continue to work on the at-will terms that the company had offered. And Mason does not suggest that an employee can trigger their own right to severance by saying, I'm not going to work at will. I don't want to be an at-will employee. Let me ask you about how you deal with paragraph 9A of the agreement. As I read that, it pretty clearly says that the non-compete duties apply following, quote, termination of executive's employment. So you have to have a termination of the executive's employment to trigger the non-compete. As I also understand it, the allegation, at least, is that your client took the position that the non-compete had been triggered. Therefore, I then look back at the language on paragraph 6, which says severance applies if employment is terminated by the company for any reason. So it sounds like 9A and 6 align, both triggering the non-compete and the severance payments on whether the employment is terminated by the company for any reason. And under 9A, you've taken the position that non-renewal is a termination of employee's employment. Hence, the non-compete was triggered. That's not the position the company took, Your Honor. Remember, she did leave the company. Her employment with the company absolutely was terminated. It wasn't terminated by the company, which is the triggering condition for severance under 6A. It was terminated by her, and not for good reason, but rather because she did not want to continue to work as an at-will employee. If you go to the district court docket at docket number 16-8, this is an email chain between her and the company. I would argue it is incorporated by reference into the complaint. And she says to work collaboratively. This is a June 23, 2021 email from her to Mr. Stafford, Mr. Hensley, and Mr. Kuczynski. She says to work collaboratively toward the shared goal of selling the company. If you want me to be CEO and lead the sale of eTech Directs, this is what it will take for me to agree. And she proffers a number of super enhanced compensation terms. Let me make sure I understand what you said previously. Are you saying that if upon receipt of the May 27 letter, she had simply continued on, worked as an at-will employee pursuant to that letter, then got to the August 1 date and stopped working, that the non-compete would not have applied? Well, the non-compete is phrased differently from the severance provision. Because the severance provision says that employment has to be terminated by the company. The non-compete is if employment terminates. So if she decides to walk out the door because she just doesn't like Mr. Stafford and Mr. Hensley anymore, yes, a fair reading of the non-compete agreement is that the non-compete agreement would preclude her for the following year from working for a competitor. And I would say, Your Honor, that the non-compete agreement survives the expiration of the contract. So, for example... But go back to that prior question. So if she had just gone along with the May 27 letter, the non-compete would have been triggered. Would the severance have been triggered as well? Well, I don't agree with Your Honor that she was converted to an at-will employee on May 27. Well, if she had just done whatever your client wanted in that May 27 letter, would the severance have been triggered? No. No, Your Honor. Would the non-compete have been triggered? No, Your Honor. No. The non-compete, the 12 months begins to run after the termination of her employment, not at the expiration of the agreement. And that's the plain language of Section 9. And there's a good reason for that. If she had stayed on as an at-will CEO for 20 years, the company wouldn't have wanted her to go immediately work for a competitor after that 20-year stint of employment was up. And there's also the possibility that her at-will employment would have only been temporary and they would have negotiated a new contract. Again, this company was looking at multiple options. It was having cash difficulties. They didn't want to renew the contract then, but that wouldn't preclude them from transitioning her back to a contracted employee in the future. And that's not just a random hypothetical that would never happen in the real world. We filed our brief on October 28. The World Series started that day. Dusty Baker, the manager for the Houston Astros, he had his contract terminate, expire on October 31. He then managed the last four games of the World Series as an at-will manager, and he just recently had a new contract given to him. So these things happen all the time. Employees transition from under contract to at-will, and sometimes they transition back again. Their employment is not terminated by the company when that transition takes place. Their employment terminates when they no longer have any relationship whatsoever with the company. That latter thing did happen, but it happened because Ms. Sullivan, and she pleads this, she acknowledges this in her complaint, her employment terminated with the company by her because she chose not to continue on an at-will basis. Did she have good reason for that? She did not. If she did, would she be entitled to the severance? If she had triggered her right to terminate her own employment for good reason, and the company did not cure the reason as they were entitled to do so under the good reason paragraph, then yes, she would be entitled to severance, yes. So under that analysis that you're putting forward, it sounds like it comes down to whether the fact she'd been converted to an at-will employee, at least as she alleges, was good reason for her to walk. Well, if that's the way that the court wishes to address that question, you can just go to the good reason paragraph in the contract and see that the answer is no. That is not one of the reasons that she can terminate her own employment for good reason. If your honors don't have any further questions on the contract issue, I'm happy to pivot to the Wage Act issue. On the Wage Act issue, Mooey, Krasinski, a number of other Massachusetts Court of Appeals cases make clear that the question is whether the compensation is contingent. That is the poll star. If the answer is yes, then the question is, is the compensation commissions? If the answer to that is no, then it's not something that the Wage Act applies to. My brother, Mr. Schlansky, proposes a new rule not found anywhere in the case law, that if the contingent compensation is something that you have to earn through doing something, even something like not competing, so not taking action, then it's earned wages under the Wage Act. But that would swallow, that exception would swallow the rule that the Massachusetts Supreme Judicial Court and all of the Courts of Appeals in Massachusetts have adopted because there's a number of different contingent compensations that people earn that are not commissions. For example, a bonus for good performance, that's compensation that's earned as well. But the Massachusetts courts have said that's not subject to the Wage Act because it's contingent on actually doing a good job in the mind of the employer. Severance is clearly contingent compensation because it's contingent on there actually have been a termination of employment and here contingent on a termination of employment by the company or by the executive for good reason. I would also point your honors back to the Wage Act itself, which talks about wages that the employee earns. It doesn't talk about wages that the employee earns later on after employment has ended. It presupposes that the wages were earned during the course of employment itself. And everything that Ms. Sullivan allegedly did to earn this severance would have occurred after her employment was already terminated. I see my time is expiring, Your Honor. Thank you. Thank you. At this time, Mr. Schlansky, please reintroduce yourself on the record to begin your three-minute rebuttal. Thank you. David Schlansky for Valerie Sullivan, if I may. So this is very interesting and squarely on point. So the earning of things is the hallmark of Wage Act compensation. And the bonus reveals exactly why earning matters. Because a bonus is in the past. It is not doing something executory. The nature of this work, both in the four corners of the contract, but also in the agreement that is required for Ms. Sullivan to sign if she wants to get the compensation, requires not only that she refrain from competition and solicitation during a period, and again, there's the Massachusetts Garden Leave Statute that distributes over those services and those refraining from services for others, but there's also an affirmative obligation that she be available to consult, to transition, to help the company. So that's in the Exhibit B that's appended to the contract itself. So it illustrates exactly what's going on here, which is, yes, if you are getting a bonus for something you've done while you're an employee, then there may be a Wage Act issue about that. But this is different. This is saying that you have continuing obligations to earn consideration. That consideration is earned. That's the ambit of the Wage Act. And especially given the bolstering of this by the Garden Leave Statute, which says you may not charge, you may not pay less than half of the consideration during the prior period for the executory period of the coming services or negative services, that is squarely on point. That's saying that this is earned. It's earned by refraining. It's earned by affirmative doing of something. So some of the other things that, again, the record should make perfectly clear is, Your Honor is correct that Sections 9 and 6 align. It's crystal clear. There's no better measure of what the parties intended by what they did. The employer said very clearly, prepare to abide by the terms and conditions of your employment agreement. So as she approaches that August 1 date, they're saying, prepare to do this. But they're saying, what do you say to their argument that she quit without good reason? Your Honor, this is a double puzzle, right? Because you asked the question of, isn't it true that she was terminated in May? And the fact is she was, and that's clearly in the complaint, and that's exactly right. But even if she hadn't been, the conversion to at will is a change of status that purports to be a unilateral revision of a contract that's either a breach or it's a change of her employment status. And how do you tie that into the good reason definition in the contract? Well, first off, it was acknowledged by everybody that good reason did not apply. She gave them an opportunity to cure. They didn't want a cure. She didn't call it good reason. This was not a good reason leaving. She wasn't leaving. And, Your Honor, this is a good thing. Did she have a good reason for leaving? Under the provisions of that clause, probably not, because she was continued on in all of her duties. They were just unilaterally changing her status from a one-year evergreen contract to an at will. And that is a breach of contract, and that is a termination. So getting back to Your Honor's question. You need to wrap up. Yes, sir. That's all I have, Your Honor. Thank you. Thank you for your time. That concludes the argument in this case.